ERK:SH:DW
F.#2007R01597

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

PETER SHERLOCK,
ANTHONY LUPO,
CRAIG DEMIZIO and
DONATO TRAMONTOZZI,

              Defendants.

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C.,
§§ 1001(a)(1),
1001(a)(2), 1343, 1346,
1348, 1349, 1956(h),
1957, 2 and 3551 et seq.;
T. 31, U.S.C.,
§§ 5324(a)(3) and
5324(d)(1))

- - - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

### The Stock-Loan Business

1. In the securities industry, financial institutions and their customers frequently engaged in transactions (including "short sales") that required them to borrow securities from other financial institutions. In a typical stock-loan transaction, the lending institution and the borrowing institution established several financial terms for the stock-loan transaction. These terms typically included: (a) the fees and other payments, known as "rebates," that the parties would pay to each other in connection with the transaction; (b) the form of collateral to be posted by the borrower, which was often cash; and (c) the amount

of the collateral, which was typically based on the market value of the securities being borrowed.

Stock-Loan Finders

2. Stock-loan "finders" were entities in the business of facilitating stock-loan transactions in exchange for fees. Most finders were not registered broker-dealers. Borrowers and lenders typically paid the finders' fees from the profits earned in connection with particular stock-loan transactions.

The Defendants

3. In or about and between October 1994 and December 2005, the defendant PETER SHERLOCK was employed by Morgan Stanley & Co., Inc. ("Morgan Stanley") in that firm's securities lending department. SHERLOCK's duties included borrowing and loaning securities on behalf of Morgan Stanley and its clients. As an agent and employee of Morgan Stanley, SHERLOCK owed Morgan Stanley a duty of honest services and was required to make business decisions in Morgan Stanley's best interests, without regard to his own personal gain or his family members' personal gain.

4. In or about and between January 1997 and December 2005, the defendant ANTHONY LUPO owned Clinton Management, Inc. ("Clinton Management"), located at 319 Court Street, Brooklyn, New York. LUPO, through Clinton Management, held himself out as a stock-loan finder.

3

5. In or about April 2002, the defendants PETER SHERLOCK and DONATO TRAMONTOZZI became brothers-in-law as a result of SHERLOCK's marriage to TRAMONTOZZI's sister. During the year 2004, TRAMONTOZZI was employed full-time by Walgreens as a pharmacist.

6. In or about July 2004, while still employed as a pharmacist, the defendant DONATO TRAMONTOZZI caused the formation of DFT Consulting, Inc. ("DFT Consulting"). The business address for DFT Consulting was 319 Court Street, Brooklyn, New York, which is the same address as that for Clinton Management.

7. In or about and between December 1991 and December 2005, Stock Loan Trader A ("Trader A"), whose identity is known to the Grand Jury, worked in the securities lending department at Morgan Stanley. In or about and between December 2001 and December 2005, Trader A was a supervisor on Morgan Stanley's securities lending desk. As an agent and employee of Morgan Stanley, Trader A owed Morgan Stanley a duty of honest services and was required to make business decisions in Morgan Stanley's best interests, without regard to his own personal gain or his family members' personal gain.

8. In or about and between June 1997 and December 2004, the defendant CRAIG DEMIZIO owned CD Management, Inc. ("CD Management"). CD Management's address was DEMIZIO's residential address in Staten Island, New York. DEMIZIO, through CD

Management, held himself out as a stock-loan finder. DEMIZIO was a family relative of Trader A.

The Fraudulent Scheme

9. During the period from January 2001 to December 2005, Morgan Stanley's practice was not to pay finder fees in connection with stock-loan transactions. Nevertheless, the defendant PETER SHERLOCK, Trader A and others executed a scheme for the defendant ANTHONY LUPO and Clinton Management to receive finder fees in connection with certain stock-loan transactions involving securities borrowed from or loaned to Morgan Stanley (the "Clinton Management Securities"). Pursuant to this scheme, the defendant PETER SHERLOCK, Trader A and others arranged for Morgan Stanley to borrow the Clinton Management Securities from, and loan the Clinton Management Securities to, certain intermediary financial institutions that themselves either: (a) paid finder fees to the defendant ANTHONY LUPO and Clinton Management; or (b) acted as middlemen between Morgan Stanley and firms that paid finder fees to LUPO and Clinton Management.

10. As part of this scheme, LUPO paid a portion of the finder fees in kickbacks and bribes to: (a) SHERLOCK in the form of cash; (b) TRAMONTOZZI and DFT Consulting in the form of stock-loan "rebates" in instances in which neither TRAMONTOZZI nor DFT Consulting had performed any legitimate finder services; and (c) to CRAIG DEMIZIO and CD Management in the form of stock-loan

"rebates" in instances in which neither CRAIG DEMIZIO nor CD Management had performed any legitimate finder services. All of these payments were made without the knowledge or approval of Morgan Stanley.

## COUNT ONE
(Conspiracy to Commit Securities Fraud and Wire Fraud)

11. The allegations contained in paragraphs 1 through 10 are realleged and incorporated as though fully set forth in this paragraph.

12. In or about and between September 2001 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PETER SHERLOCK, ANTHONY LUPO, CRAIG DEMIZIO and DONATO TRAMONTOZZI, together with Trader A and others, did knowingly and intentionally conspire:

    a. to execute a scheme and artifice to defraud and obtain money and property from Morgan Stanley and others by means of materially false and fraudulent pretenses, representations and promises, and to deprive Morgan Stanley of its right to the honest services of its employees, to wit: PETER SHERLOCK and Trader A, in connection with securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: the Clinton Management Securities, in violation of Title 18, United States Code, Sections 1348(1) and 1346; and

b. to devise a scheme and artifice to defraud and obtain money and property from Morgan Stanley and others by means of materially false and fraudulent pretenses, representations and promises, and to deprive Morgan Stanley of its right to the honest services of its employees, to wit: PETER SHERLOCK and Trader A, and for the purpose of executing such scheme and artifice, and attempting to do so, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT TWO
(Money Laundering Conspiracy)

13. The allegations contained in paragraphs 1 through 10 are realleged and incorporated as though fully set forth in this paragraph.

14. In or about and between September 2001 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants PETER SHERLOCK, ANTHONY LUPO, CRAIG DEMIZIO and DONATO TRAMONTOZZI, together with others, did knowingly and intentionally conspire to conduct financial transactions in and affecting interstate and foreign commerce, to wit: the

withdrawal, transfer, delivery and deposit of United States currency; the payment, delivery, receipt and deposit of stock-loan "rebates" and finder fees; the payment, receipt and deposit of salaries derived from stock-loan rebates and finder fees; and the transfer of funds between accounts; which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity: (a) with the intent to promote the carrying on of the specified unlawful activity; and (b) knowing that the transactions were designed in whole and in part: (i) to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity; and (ii) to avoid a transaction reporting requirement under Federal law, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### COUNTS THREE THROUGH THIRTY-THREE
(Engaging in Unlawful Monetary Transactions)

15. The allegations contained in paragraphs 1 through 10 are realleged and incorporated as though fully set forth in this paragraph.

16. On or about the dates set forth below, such dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants listed below, together with others, did knowingly and intentionally engage in one or more monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value of greater than $10,000 and was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

| COUNT | DATE | AMOUNT | PAYOR | PAYEE-DEFENDANT |
|---|---|---|---|---|
| THREE | June 9, 2003 | $14,650.00 | CD Management | DEMIZIO |
| FOUR | July 8, 2003 | $12,892.00 | CD Management | DEMIZIO |
| FIVE | July 29, 2003 | $23,000.00 | CMI Management | LUPO |
| SIX | August 6, 2003 | $12,306.00 | CD Managment | DEMIZIO |
| SEVEN | August 26, 2003 | $25,431.00 | CMI Management | LUPO |
| EIGHT | September 3, 2003 | $13,478.00 | CD Managment | DEMIZIO |
| NINE | September 19, 2003 | $24,825.00 | CMI Management | LUPO |
| TEN | October 3, 2003 | $11,134.00 | CD Managment | DEMIZIO |
| ELEVEN | October 22, 2003 | $21,192.08 | CMI Management | LUPO |
| TWELVE | November 20, 2003 | $23,000.00 | CMI Management | LUPO |
| THIRTEEN | December 19, 2003 | $21,192.50 | CMI Management | LUPO |
| FOURTEEN | December 29, 2003 | $14,904.00 | CD Managment | DEMIZIO |
| FIFTEEN | July 21, 2004 | $10,326.50 | CMI Management | LUPO |
| SIXTEEN | August 20, 2004 | $20,653.00 | CMI Management | LUPO |
| SEVENTEEN | September 1, 2004 | $16,000.00 | DFT Consulting | TRAMONTOZZI |
| EIGHTEEN | September 17, 2004 | $15,000.00 | DFT Consulting | TRAMONTOZZI |
| NINETEEN | September 20, 2004 | $18,685.00 | CMI Management | LUPO |
| TWENTY | October 22, 2004 | $23,920.00 | CMI Management | LUPO |

| TWENTY-ONE | October 25, 2004 | $16,000.00 | DFT Consulting | TRAMONTOZZI |
| TWENTY-TWO | November 15, 2005 | $18,000.00 | DFT Consulting | TRAMONTOZZI |
| TWENTY-THREE | November 18, 2004 | $30,275.00 | CMI Management | LUPO |
| TWENTY-FOUR | December 22, 2004 | $21,992.50 | CMI Management | LUPO |
| TWENTY-FIVE | January 21, 2005 | $22,827.00 | CMI Management | LUPO |
| TWENTY-SIX | January 26, 2005 | $12,000.00 | DFT Consulting | TRAMONTOZZI |
| TWENTY-SEVEN | February 28, 2005 | $21,740.00 | CMI Management | LUPO |
| TWENTY-EIGHT | March 24, 2005 | $20,524.00 | CMI Management | LUPO |
| TWENTY-NINE | April 22, 2005 | $14,641.00 | CMI Management | LUPO |
| THIRTY | June 15, 2005 | $10,510.00 | CMI Management | LUPO |
| THIRTY-ONE | July 19, 2005 | $14,714.00 | CMI Management | LUPO |
| THIRTY-TWO | October 17, 2005 | $15,137.50 | CMI Management | LUPO |
| THIRTY-THREE | November 21, 2005 | $13,926.50 | CMI Management | LUPO |

(Title 18, United States Code, Sections 1957, 2 and 3551 et seq.)

## INTRODUCTION TO COUNT THIRTY-FOUR

17.  At all times relevant to this Indictment, the currency reporting requirements provided as follows:

(a)  Transactions in currency were defined as transactions involving the physical transfer of money as defined in Title 31, Code of Federal Regulations, Section 103.11(ii). Transactions in currency, as defined in Title 31, Code of Federal

Regulations, Section 103.11(ii)(1), included deposits to and withdrawals from a domestic financial institution, by whatever means effected.

(b) Domestic financial institutions were required to file a Currency Transaction Report (IRS Form 4789, hereinafter referred to as a "CTR") with the Internal Revenue Service ("IRS") for each transaction of currency or other payment or transfer by, through or to a financial institution, in excess of $10,000, as required by Title 31, United States Code, Section 5313 and Title 31, Code of Federal Regulations, Section 103.22.

(c) CTRs were filed with the IRS on forms that required, among other things, disclosure of the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

(d) CTRs were required to be filed to assist the United States in criminal, tax and regulatory investigations and proceedings, as stated in Title 31, Code of Federal Regulations, Section 103.20.

(e) "Structuring" financial transactions meant conducting one or more transactions in currency, in any amount at one or more financial institutions, on one or more days, in any manner, including by breaking down a single sum of currency exceeding $10,000 into smaller sums or conducting a transaction or a series of transactions at or below $10,000, in an attempt to

evade currency reporting requirements, as defined in Title 31, Code of Federal Regulations, Section 103.11(gg).

### COUNT THIRTY-FOUR
(Structured Financial Transactions)

18. The allegations contained in paragraphs 1 through 10 and 17 are realleged and incorporated as though fully set forth in this paragraph.

19. In or about and between July 2004 and February 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DONATO TRAMONTOZZI, together with others, for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313 and the regulations prescribed thereunder, did knowingly and intentionally structure and assist in structuring transactions with domestic financial institutions by: breaking down single sums of currency exceeding $10,000 into smaller sums and conducting withdrawals of currency in a series of transactions below $10,000 on separate days.

(Title 31, United States Code, Sections 5324(a)(3) and 5324(d)(1); Title 18, United States Code, Sections 3551 et seq.)

### COUNT THIRTY-FIVE
(False Statements)

20. The allegations contained in paragraphs 1 through 10 and 17 are realleged and incorporated as though fully set forth in this paragraph.

21. On or about January 17, 2007, within the Eastern District of New York, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Bureau of Investigation, the defendant PETER SHERLOCK did knowingly and willfully: (a) falsify, conceal and cover up by trick, scheme and device one or more material facts; and (b) make one or more materially false, fictitious and fraudulent statements and representations, in that he falsely stated and represented to a Special Agent of the FBI:

(i) that all the tenants renting property owned by Donato Tramontozzi and SHERLOCK's wife paid their monthly rent in cash; and

(ii) that cash deposits made into SHERLOCK's bank accounts consisted of cash rent payments;

when, as SHERLOCK then and there well knew and believed, each of these statements and representations was materially false and designed to conceal and cover up his receipt of cash kickbacks and bribes.

(Title 18, United States Code, Sections 1001(a)(1), 1001(a)(2) and 3551 et seq.)

### COUNT THIRTY-SIX
(False Statements)

22. The allegations contained in paragraphs 1 through 10 and paragraph 17 are realleged and incorporated as though fully set forth in this paragraph.

23. On or about August 25, 2006, within the Eastern District of New York, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Bureau of Investigation, the defendant ANTHONY LUPO did knowingly and willfully: (a) falsify, conceal and cover up by trick, scheme and device one or more material facts; and (b) make one or more materially false, fictitious and fraudulent statements and representations, in that he falsely stated and represented to a Special Agent of the FBI:

(i) that Donato Tramontozzi was a stock-loan finder;

(ii) that Donato Tramontozzi earned finder fees by obtaining securities from Morgan Stanley; and

(iii) that LUPO had an arrangement with Craig Demizio whereby Demizio ran the stock-loan transactions that Demizio obtained from Morgan Stanley through Clinton Management; when, as LUPO then and there well knew and believed, each of these statements and representations was materially false and designed to conceal and cover up his payment of kickbacks and bribes in the form of sham finder fees and stock-loan rebates.

(Title 18, United States Code, Sections 1001(a)(1), 1001(a)(2) and 3551 et seq.)

## COUNT THIRTY-SEVEN
(False Statements)

24. The allegations contained in paragraphs 1 through 10 and paragraph 17 are realleged and incorporated as though fully set forth in this paragraph.

25. On or about February 5, 2007, within the Eastern District of New York, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Bureau of Investigation, the defendant ANTHONY LUPO did knowingly and willfully: (a) falsify, conceal and cover up by trick, scheme and device one or more material facts; and (b) make one or more materially false, fictitious and fraudulent statements and representations, in that he falsely stated and represented to a Special Agent of the FBI:

(i) that LUPO paid the defendant Craig Demizio and CD MANAGEMENT pursuant to an agreement with Demizio that Demizio would not compete with LUPO for Morgan Stanley business; and

(ii) that the initials "D" and "P" in the symbols 101D and 101P found in the Clinton Management monthly broker detail reports likely referred to the types of stock LUPO traded, such as "borrows," "loans" and "premium stocks";

when, as LUPO then and there well knew and believed, each of these statements and representations was materially false and

15

designed to conceal and cover up his payment of kickbacks and bribes in the form of sham finder fees and stock-loan rebates.

(Title 18, United States Code, Sections 1001(a)(1), 1001(a)(2) and 3551 et seq.)

### COUNT THIRTY-EIGHT
(False Statements)

26. The allegations contained in paragraphs 1 through 14 and paragraph 17 are realleged and incorporated as though fully set forth in this paragraph.

27. On or about December 6, 2006, within the Eastern District of New York and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Bureau of Investigation, the defendant CRAIG DEMIZIO did knowingly and willfully: (a) falsify, conceal and cover up by trick, scheme and device one or more material facts; and (b) make one or more materially false, fictitious and fraudulent statements and representations, in that DEMIZIO falsely stated and represented to a Special Agent of the FBI that DEMIZIO's income between the years 2000 and 2004 was approximately a couple of thousand dollars a month, when, as DEMIZIO then and there well knew and believed, each of these statements and representations was materially false and designed

to conceal and cover up his receipt of kickbacks and bribes in the form of sham finder fees and stock-loan rebates.

(Title 18, United States Code, Sections 1001(a)(1), 1001(a)(2) and 3551 et seq.)

A TRUE BILL

*Gordan Dunca*
FOREPERSON

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

## INFORMATION SHEET

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1. Title of Case:  United States v. Peter Sherlock, Anthony Lupo, Craig Demizio and Donato Tramontozzi

2. Related Magistrate Docket Number(s) _____

    None ( x )

3. Arrest Date: ____N/A____

4. Nature of offense(s):  X  Felony
                          ☐  Misdemeanor

5. Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3 of the Local E.D.N.Y. Division of Business Rules):

   United States v. Joseph Miller, 07 Cr. 688 (JG)

6. Projected Length of Trial:  Less than 6 weeks  (X)
                               More than 6 weeks  ( )

7. County in which crime was allegedly committed: __Kings__
   (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8. Has this indictment been ordered sealed?           (X) Yes  ( ) No

9. Have arrest warrants been ordered?                 (X) Yes  ( ) No

10. Is a capital count included in the indictment?    ( ) Yes  (X) No

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY

By: _____
Sean T. Haran
Assistant U.S. Attorney
(718) 254-6176

Rev. 3/22/01